**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ESTATE OF ROBIN COTTINGHAM, et al.,
Plaintiffs,

vs.

HAMILTON COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES, et al.,
Defendants.

Case No. 1:16-cv-704
Dlott, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Robert Midell brings this pro se civil rights action under 42 U.S.C. § 1983 and Ohio law individually and on behalf of the estate of his deceased daughter Robin Cottingham. (*See generally* Doc. 2). This matter is before the Court on the County defendants'[1] motion to dismiss[2] (Doc. 18), plaintiffs' response in opposition (Doc. 21), the County defendants' reply memorandum (Doc. 22), and plaintiffs' sur-reply (Doc. 23).[3]

**I. Background Facts**

Plaintiffs allege that on July 22, 2013, defendant Janishcia Cottingham, the mother of decedent Robin Cottingham ("Robin"), took Robin to HCJFS, "stating she didn't want to care for her anymore." (Doc. 2 at ¶ 1). Defendant Frimming, an intake specialist at HCJFS, called plaintiff Midell from defendant Cottingham's phone and told him that defendant Cottingham no longer wanted to care for Robin. (*Id.* at ¶ 15). Plaintiff Midell's mother, Jacqueline Richardson

---

[1] The County defendants include the Hamilton County Department of Job and Family Services ("HCJFS"), Hamilton County, Ohio, the individual Commissioners of the Board of County Commissioners in their official capacities, HCJFS Director Moira Weir in her individual and official capacities, HCJFS Supervisor Susan Moore in her individual and official capacities, HCJFS case workers Ishanae Pollard and Dionne Barnett in their individual and official capacities, and HCJFS intake specialist Mickey Frimming in her individual and official capacities.

[2] In addition to the federal and state law claims against the County defendants, plaintiffs have raised state law claims against defendant Janishcia Cottingham, decedent's mother. Defendant Cottingham is not a party to the instant motion to dismiss.

[3] The County defendants request oral argument. (Doc. 18 at 1). The Court finds that the pleadings are clear on their face, and that oral argument is not necessary. *See Whitescarver v. Sabin Robbins Paper Co.*, No. 1:03-cv-911, 2006 WL 2128929, at *2 (S.D. Ohio Jul. 27, 2006) ("Local Rule 7.1(b)(2) leaves the Court with discretion whether to grant a request for oral argument.").

asked defendant Frimming to open a case to investigate the matter but Frimming refused, stating "do you [k]now how much paper work that would be[?]" (*Id.*). Plaintiff took custody of Robin that evening. (*Id.*).

On Saturday, July 27, 2013, defendant Pollard, a case worker at HCJFS, encountered defendant Cottingham at the HCJFS office. (*Id.* at ¶ 21). Defendant Cottingham appeared disoriented to time and place and wanted to fight defendant Pollard, accusing her of taking Robin. (*Id.*). Defendant Pollard called the police who escorted defendant Cottingham to University Hospital, where she was placed in restraints and sedated. (*Id.* at ¶¶ 21-22).

On July 29, 2013, plaintiff called HCJFS and asked defendant case worker Dionne Barnett if he could relinquish Robin to HCJFS's care. (*Id.* at ¶ 23). Defendant Barnett told plaintiff that HCJFS could take Robin. The next day, plaintiff learned that HCJFS returned Robin to defendant Cottingham's custody. (*Id.*). On August 15, 2013, defendant Cottingham smothered Robin, a crime for which she is presently incarcerated. (*See id.*; Hamilton County Probate Court Entry Appointing Fiduciary, Doc. 2-1, Exh. A).

Plaintiffs' complaint alleges four counts. In Count 1, plaintiffs allege under 42 U.S.C. § 1983 that the County defendants violated Robin's rights under the First, Fourth, Fifth, and Fourteenth Amendments. (Doc. 2 at ¶¶ 25-30). In addition to this federal claim, plaintiffs allege two state law counts of wrongful death and a state law count of survivorship. (*See id.* at ¶¶ 31-44).

## II. Motion to Dismiss Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is

entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While the Court must accept all well-pleaded factual allegations as true, the Court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III. Resolution

### A. Standing

In their motion to dismiss, the County defendants first argue that this Court lacks jurisdiction to consider plaintiff Midell's individual claims because he has failed to establish that he is Robin's biological father and, thus, cannot establish an injury in fact for standing purposes. (*See* Doc. 18 at 6).[4] Additionally, the County defendants assert that plaintiffs cannot satisfy the causation requirement for establishing standing to sue the County defendants because Robin's death was caused by the independent actions of defendant Cottingham. (*Id.* at 6; Doc. 22 at 2). However, based on DNA evidence that plaintiffs have submitted with their response in

---

[4] Page citations refer to the page numbers provided by CM/ECF.

opposition (*see* Doc. 21-1 at 1),[5] the County defendants have abandoned their argument that plaintiff Midell cannot establish an injury in fact as Robin's next of kin. (*See* Doc. 22 at 2). Thus, the Court need only determine whether plaintiffs have sufficiently pled causation.

"The threshold question in every federal case is whether the court has the judicial power to entertain the suit." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 709 (6th Cir. 2015) (quoting *Nat'l Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)). "Article III of the United States Constitution prescribes that federal courts may exercise jurisdiction only where an actual 'case or controversy' exists." *Id.* at 709-10 (citing U.S. Const. art. III, § 2). "Courts have explained the 'case or controversy' requirement through a series of 'justiciability doctrines,' including, 'perhaps the most important,' that a litigant must have 'standing' to invoke the jurisdiction of the federal courts." *Id.* at 710 (citing *Magaw*, 132 F.3d at 279). The Supreme Court has held that the following elements are necessary to establish standing:

> First, Plaintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted). As to causation, the Sixth Circuit has explained that "causation need not be proximate" and "the fact that an injury is indirect does not destroy standing as a matter of course." *Parsons*, 801 F.3d at 713 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1391 n.6 (2014); *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 (1973)).

---

[5] In determining whether it has jurisdiction over a claim, the Court may consider materials outside the complaint without converting a motion to dismiss into a motion for summary judgment. *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915-16 (6th Cir. 1986).

Here, construing the complaint in the light most favorable to plaintiffs, they have sufficiently alleged causation. While the parties do not dispute that defendant Cottingham was the one who smothered Robin, she would not have been able to do so if HCJFS had not returned Robin to her custody. Thus, plaintiffs have sufficiently alleged for standing purposes that the actions of HCJFS employees indirectly caused Robin's death and plaintiffs may pursue this action against the County defendants. *See Parsons*, 801 F.3d at 713.

**B. Statute of Limitations**

Defendants next argue that plaintiffs' claims are barred by the applicable statutes of limitations. (Doc. 18 at 6-9). Defendants also argue that the Ohio savings statute does not operate to save plaintiff's federal court claims from the statute of limitations bar.

"The limitations period for an action under 42 U.S.C. § 1983 is determined by the limitations period for personal injury actions in the state in which the Section 1983 claim arises." *Eaves v. Strayhorn*, No. 1:09-cv-394, 2010 WL 2521449, at *5 (S.D. Ohio Jun. 15, 2010) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). In Ohio, the statute of limitations for personal injury actions is two years. *See* Ohio Rev. Code § 2305.10(A). Plaintiffs' state law claims for wrongful death and survivorship are also governed by a two-year statute of limitations. *See* Ohio Rev. Code §§ 2125.02(D)(1) (wrongful death); 2305.21 (survivorship). Robin's death occurred on August 15, 2013. (*See* Doc. 2 at ¶ 23; Doc. 2-1, Exh. A). Thus, to comply with the applicable statutes of limitations, plaintiffs were required to file suit by August 15, 2015. Plaintiffs filed their complaint on June 29, 2016, nearly one year after the statute of limitations expired. Therefore, plaintiffs' complaint is barred by the applicable two-year statute of limitations unless it is saved by the Ohio savings statute.

"Ohio's savings statute allows a plaintiff to commence a new action one year after a judgment is reversed or fails 'otherwise than upon the merits.'" *Eaves*, 2010 WL 2521449, at *5

(quoting Ohio Rev. Code § 2305.19). "This statute applies when 'the original suit and the new action are substantially the same.'" *Id.* (quoting *Children's Hospital v. Ohio Dep't of Pub. Welfare*, 433 N.E.2d 187, 189 (Ohio 1982)). "[A]ctions are not substantially the same when the parties in the two actions are different." *Id.* (citing *Children's Hospital*, 433 N.E.2d at 189).

Here, plaintiff Midell filed a complaint in the Ohio Court of Claims that named HCJFS as the defendant, acting through its agents Moira Weir, Susan Moore, and Ishanae Pollard. (*See* Apr. 24, 2015 Complaint, Doc. 18-1, Exh. E).[6] On April 27, 2015, the Court of Claims dismissed HCJFS as a party defendant in the action because "only state agencies and instrumentalities can be defendants in original actions in the Court of Claims." (Order of the Magistrate dated Apr. 27, 2015, Doc. 18-1, Exh. F). The Court of Claims ordered plaintiff Midell to file an amended complaint that named a state agency or instrumentality as a defendant by May 27, 2015. (*Id.*). On May 7, 2015, plaintiff Midell filed an amended complaint that named the Ohio Department of Job and Family Services ("ODJFS") as the defendant, acting through its agents Weir, Moore, and Pollard. (*See* May 7, 2015 Complaint, Doc. 18-1, Exh. G). On December 10, 2015, plaintiff Midell voluntarily dismissed his action in the Ohio Court of Claims. (*See* Docket Sheet for *Midell v. ODJFS*, case no. 2015-402, Doc. 18-1, Exh. D).

Under the Ohio savings statute, the issue for the Court is whether plaintiffs' federal court complaint, which was filed within one year of the voluntary dismissal of the Court of Claims case, is "substantially the same" as the Court of Claims case. *Children's Hospital*, 433 N.E.2d at 189. For the reasons that follow, the Court finds that plaintiffs' Ohio Court of Claims case and federal court case are not substantially the same for purposes of the Ohio savings statute.

---

[6] Documents from plaintiffs' state court action are public records that the Court may consider without converting the motion to dismiss into a motion for summary judgment. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502-03 (6th Cir. 2001).

The relevant Court of Claims action for purposes of the savings statute is the amended complaint filed by plaintiff Midell against the ODJFS and dismissed after the statute of limitations expired. While ODJFS was named as a defendant in the Court of Claims action[7], ODJFS is not named as a defendant in the instant federal court action. Rather, plaintiffs name entirely new defendants in the federal court case: HCJFS, Hamilton County, Ohio, the individual Commissioners of the Board of County Commissioners, and Moira Weir, Susan Moore, Ishanae Pollard, Dionne Barnett, and Mickey Frimming in their individual and official capacities.[8] Because the federal court defendants were not named as defendants in plaintiffs' case before the Ohio Court of Claims and the party defendants in the two actions are different, Ohio's savings statute does not save plaintiffs' claims against them.[9] *See Children's Hosp.*, 433 N.E.2d at 189-90 (finding lawsuits not substantially the same where original federal lawsuit named the Governor of Ohio, Director of the Ohio Department of Public Welfare and Secretary of the United States Department of Health, Education and Welfare as defendants and new action before Court of Claims named Ohio Department of Public Welfare as the sole defendant). *See also Griffin v. City of Columbus*, 10 F. App'x 271, 273 (6th Cir. 2001) (finding Ohio savings statute inapplicable to plaintiff's claims against defendants who were not parties in the prior action); *Eaves*, 2010 WL 2521449, at *7 ("The Hamilton County Defendants are indisputably different from the parties named in the original complaint, and Ohio's savings statute cannot be used to circumvent or undermine Ohio's statute of limitations or the federal pleading rules."). Thus, Ohio's savings statute does not save plaintiffs' federal court action from the statute of

---

[7] Under the Ohio savings statute, "[t]he *only* defendant in original actions in the court of claims is the state." Ohio Rev. Code § 2743.02(E) (emphasis added).

[8] The Court notes that under Ohio law, HCJFS and Hamilton County are not *sui juris* and therefore cannot be sued. *See Estate of Glenara Bates v. Hamilton Cty. Dep't of Job & Family Servs.*, No. 1:15-cv-798, 2017 WL 106871, at *1 n.1 (S.D. Ohio Jan. 11, 2017).

[9] The Court also notes that plaintiff the Estate of Robin Cottingham was not a named plaintiff in the Ohio Court of Claims case.

limitations bar. Therefore, defendants' motion to dismiss should be granted as plaintiffs' claims against the federal defendants were not brought within the limitations period.

**C. 42 U.S.C. § 1983**

In the alternative, this action should be dismissed because plaintiffs have failed to state a claim for relief under § 1983. "A § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)). *See also Doe v. Claiborne Cty.*, 103 F.3d 495, 505-06 (6th Cir. 1996) (applying this inquiry to a defendant county).

Plaintiffs' complaint alleges that the County defendants violated Robin's civil rights under the First, Fourth, Fifth, and Fourteenth Amendments. (*See* Doc. 2 at ¶ 25). Although plaintiffs have failed to allege how their rights under these amendments are implicated, the Court will consider the potential rights at issue in turn.

*1. First and Fourth Amendments*

The First Amendment protects the free exercise of religion, freedom of speech, freedom of press, freedom of assembly, and the right to petition the government. *See* U.S. Const. amend. I. The Fourth Amendment protects against unreasonable searches and seizures and requires probable cause for the issuance of warrants. *See* U.S. Const. amend. IV. Plaintiffs' complaint alleges no facts that would plausibly suggest a violation of any of the rights guaranteed by these amendments. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. Thus, plaintiffs do not state a claim for relief for violations of their First and Fourth Amendment rights.

*2. Fifth and Fourteenth Amendments*

The Due Process Clauses of the Fifth and Fourteenth Amendments provide the only protections in these amendments that could potentially apply to plaintiffs' case.

> As interpreted by the courts, the Due Process Clause protects substantive due process, which is the right to be free from government infringement against certain liberties such as personal security regardless of the process used, as well as procedural due process, which is the right to a fair procedure when the government deprives a person of protected liberties.

*Langdon v. Skelding*, 524 F. App'x 172, 175 (6th Cir. 2013). The Court will consider the applicability of substantive and procedural due process protections in turn.

*a. Substantive Due Process*

Plaintiffs allege the County defendants had a duty to act in the "best interests of the child" and a duty to protect Robin from harm. (*See* Doc. 2 at ¶¶ 2, 26).

"The Due Process Clause's purpose is 'to protect the people from the State, not to ensure that the State protects them from each other.'" *Estate of Glenara Bates*, 2017 WL 106871, at *3 (quoting *Langdon*, 524 F. App'x at 175). "As a general rule, the State has no obligation to protect the life, liberty, or property of its citizens against invasion by private actors." *Id.* (quoting *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 853 (6th Cir. 2016)). "Two exceptions to this rule exist: (1) where the State enters into a 'special relationship' with an individual by taking that person into its custody; and (2) where the State creates or increases the risk of harm to an individual." *Id.* (citing *Stiles*, 819 F.3d at 853).

Here, plaintiffs allege that defendant Cottingham, a private actor, was the person who smothered Robin. (*See* Doc. 2 at ¶ 23). Under the general rule, the County defendants are presumed to have had no obligation to protect Robin from defendant Cottingham. *See Estate of Glenara Bates*, 2017 WL 106871, at *3. Thus, to overcome this presumption under the general rule and state a substantive due process claim, plaintiffs must allege either a special relationship between Robin and the County defendants or an action of the County defendants that created or increased the risk of harm to Robin. *See id.*

First, plaintiffs have not alleged that a special relationship existed between Robin and the County defendants.

The Supreme Court explained the requirements for showing a special relationship in *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989), where a child was severely beaten by his father and suffered permanent brain damage after the local child protective services received complaints of abuse but did not seek removal of the child. *Id.* at 191-93. The Supreme Court held that the State had no constitutional duty to protect the child because he was injured while in the custody of his father and not the State. *Id.* at 201. The Court explained:

> The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*Id.* at 195-96. The Supreme Court explained that the "purpose [of the Due Process Clause] was to protect the people from the State, not to ensure that the State protected them from each other. The Framers were content to leave the governmental obligation in the latter area to the democratic political processes." *Id.* at 196. Further, even though the State had once taken temporary custody of the child, this "[did] not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter." *Id.* at 201.

Here, plaintiffs have not plausibly alleged that a special relationship existed between Robin and the County defendants. Robin was not in the custody of the County defendants when she was injured. Even accepting plaintiffs' allegations that the County defendants took

temporary custody of Robin before returning her to defendant Cottingham (*see* Doc. 2 at ¶¶ 15, 23), that is not sufficient to establish a special relationship for due process purposes. When the County defendants returned Robin to the care of defendant Cottingham, they placed her in no worse position than if they had never become involved at all. Although the County defendants allegedly had temporary custody of Robin at one time, they were not obligated under the Due Process Clause to permanently guarantee her safety. *DeShaney*, 489 U.S. at 201.

Second, plaintiffs have not alleged actions on the part of the County defendants that created or increased the risk of harm to Robin.

To state a substantive due process claim based on a state-created danger theory, plaintiffs must allege: (1) an affirmative act that created or increased the risk to Robin; (2) a special danger to Robin as distinguished from the public at large; and (3) the requisite degree of state culpability. *See Stiles*, 819 F.3d at 854. In assessing whether the defendants took an affirmative act that created or increased the risk of harm, the Court must examine when the affirmative act occurred—before or after the intervention with the victim:

> As *DeShaney* and *Bukowski* [*v. City of Akron*, 326 F.3d 702, 709 (6th Cir. 2003)] both show, the time frame for assessing whether an affirmative act has occurred is not *after* the officers have arrived and temporarily taken control of the situation but *before* the officers have arrived. In both decisions, the officers took custody of the vulnerable victims and removed the risk of harm to them and only later returned them to the same risk they had faced before their arrival. Were it true that the question whether the officers increased the risk of harm to the victim must be answered from a different vantage point—namely, *after* the officers have arrived on the scene and temporarily removed the risk of harm, see Dissent Op. at 702–03—*DeShaney* and *Bukowski* would have come out differently. Both decisions involved fact patterns in which the officers plainly increased the risk of harm to the victims—if, that is, the proper vantage point is after, not before, the officers arrived. Instead, however, both decisions rejected these claims, concluding that "the government was merely returning a person to a situation with a preexisting danger."

*Jones v. Reynolds*, 438 F.3d 685, 696 (6th Cir. 2006) (emphasis in original) (citing *Bukowski*, 326 F.3d at 709). *Cf. Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998)

(affirmatively releasing private information from undercover police officers' personnel files, including information about their families and homes, to defense attorneys created a danger to officers and families that would not have otherwise existed). "The ultimate question in determining whether an affirmative state action increased danger to an individual is whether the individual was safer before the state action than after it." *Id.* (citing *Jasinski v. Tyler*, 729 F.3d 531, 539 (6th Cir. 2013)).

Accepting plaintiffs' allegations as true, the County defendants' act of returning Robin to defendant Cottingham's care did not create or increase the risk of harm to Robin under the state-created danger theory. Similar to the child in *DeShaney*, Robin was returned to a situation with a preexisting danger. *See Bukowski*, 326 F.3d at 709 (holding that police officers' act of returning victim to house where she was originally found did not increase victim's danger of being raped by occupant of house a second time; returning victim to "a situation with a preexisting danger" after intervening to protect victim does not satisfy affirmative act requirement for state-created danger); *Brenner v. Cuyahoga Cty. Dep't of Children & Family Servs.*, No. 1:04cv727, 2006 WL 2814913, at *10 (N.D. Ohio Sept. 28, 2006) (act of reunifying young mother with infant daughter, who were both living with foster families, which resulted in death of infant did not amount to state-created danger; child "was in no more danger after she was returned to her mother than she was when she was in her mother's custody at birth; if Defendants had not acted, she would have been in precisely the same amount of danger, if not more"). Placing Robin in her mother's custody merely returned Robin to a position no worse than if the County defendants had never become involved at all. Thus, plaintiffs do not state a claim for relief for a substantive due process violation under a state-created danger theory.

*b. Procedural Due Process*

To state a procedural due process claim, a plaintiff must allege: "(1) [s]he had a life, liberty, or property interest protected by the Due Process Clause; (2) [s]he was deprived of this protected interest; and (3) the state did not afford [her] adequate procedural rights prior to depriving [her] of the . . . interest." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)). "A liberty interest may be created by state law when a state places 'substantive limitations on official discretion.'" *Jasinski v. Tyler*, 729 F.3d 531, 541 (6th Cir. 2013) (quoting *Tony L. and Joey L. v. Childers*, 71 F.3d 1182, 1185 (6th Cir. 1995)). "A state may create such limitations by establishing substantive predicates to govern official decision-making and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Id.* (quotation marks and ellipsis omitted) (quoting *Childers*, 71 F.3d at 1185). "The state statute must use explicitly mandatory language requiring a particular outcome if the articulated substantive predicates are present." *Id.* (quotation marks omitted) (quoting *Childers*, 71 F.3d at 1185). When a state statute requires a child services caseworker to conduct an investigation in certain circumstances but gives the caseworker discretion in determining whether a child was abused or neglected, such a statute does not create a right to procedural due process in the outcome of the investigation. *See Langdon*, 524 F. App'x at 177-78 (construing Michigan statute).

Here, plaintiffs allege that the County defendants violated Robin's civil rights by placing her back in defendant Cottingham's home even though "a case [w]as opened up for Robin Cottingham in regards to neglect." (*See* Doc. 2 at ¶ 27). Construing this allegation liberally, plaintiffs allege that the County defendants failed to properly investigate Robin's case before returning her to defendant Cottingham. However, plaintiffs have not identified in support of a procedural due process claim any mandatory duty under Ohio law that the County defendants

failed to perform. Specifically, plaintiffs have not identified any provision of Ohio law that mandated that Robin not be placed back in defendant Cottingham's custody or that she be removed based on an allegation of neglect. "Absent such mandates under Ohio law there is no procedural due process violation." *Estate of Glenara Bates*, 2017 WL 106871, at *5.

Ohio Rev. Code § 5153.16 governs the duties of Ohio's public children services agencies. Like the Michigan statute at issue in *Langdon*, the Ohio statute outlines certain duties on the part of children services agencies. However, § 5153.16 does not command or direct a particular outcome and allows for the exercise of discretion in determining the outcome of an investigation. *See* Ohio Rev. Code § 5153.16. Nor does the Ohio Administrative Code mandate a particular outcome from an investigation. *See* Ohio Admin. Code §§ 5101:2-36-03, 5101:2-37-01, 5101:2-37-03, 5101:2-39-01. *See also Jackson v. Nixon*, 469 F. App'x 411, 413-14 (6th Cir. 2011) (where state-created rights do not guarantee a particular substantive outcome those rights are not protected by the Fourteenth Amendment).

The parties do not dispute that Robin was placed back into defendant Cottingham's custody and remained there until the time of her death. Plaintiffs' allegation of liability stems from this reunification of Robin with defendant Cottingham. However, plaintiffs do not identify any Ohio statute or regulation that mandated that Robin not be reunited with defendant Cottingham. Therefore, plaintiffs have failed to plausibly allege a violation of procedural due process.

**D. Qualified Immunity**

The County defendants argue that defendants Weir, Moore, Pollard, Barnett, and Frimming are entitled to qualified immunity on the individual capacity claims against them. (Doc. 18 at 19-20).

"Qualified immunity shields government officials from civil liability in the

performance of discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Glenara Bates*, 2017 WL 106871, at *6 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In resolving a government official's qualified immunity claims, [courts] look to whether (1) the facts that the plaintiff has alleged or shown establish the violation of a constitutional right, and (2) the right at issue was 'clearly established' at the time of the alleged misconduct." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 567 (6th Cir. 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Here, as explained above, plaintiffs fail to state a claim for relief under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Thus, defendants Weir, Moore, Pollard, Barnett, and Frimming are entitled to qualified immunity in their individual capacity. *See id.*; *Harlow*, 457 U.S. at 818.

**E. State Claims**

Plaintiffs assert two wrongful death claims and a survivorship claim under Ohio law. (*See* Doc. 2 at ¶¶ 31-44).

Because plaintiffs' federal claim fails as a matter of law, the Court should decline to exercise supplemental jurisdiction over the state law claims against the County defendants. *See* 28 U.S.C. § 1367(c)(3) (providing a court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *Estate of Glenara Bates*, 2017 WL 106871, at *6 (declining to exercise supplemental jurisdiction and dismissing state law claims without prejudice after concluding that plaintiffs' federal claims failed as a matter of law).

**F. The state law claims against defendant Cottingham should be dismissed.**

Plaintiffs' complaint alleges only state law claims against defendant Cottingham. (Doc. 2). Because no federal claim will remain in this lawsuit if the Court adopts this Report and Recommendation, the Court should also decline to exercise supplemental jurisdiction over the state law claims against defendant Cottingham.[10]

**IT IS THEREFORE RECOMMENDED THAT:**

1. The County defendants' motion to dismiss (Doc. 18) be **GRANTED**;

2. To the extent plaintiffs' state law claims are not barred by the statute of limitations, the Court decline to exercise supplemental jurisdiction over plaintiffs' state law claims and that such claims be **DISMISSED WITHOUT PREJUDICE**; and

3. This matter be **TERMINATED** from the docket of the Court.

Date: 1/27/2017

Karen L. Litkovitz
Karen L. Litkovitz
United States Magistrate Judge

---

[10] Even if plaintiffs alleged § 1983 claims against defendant Cottingham, plaintiffs have failed to allege any facts plausibly showing that defendant Cottingham was acting under color of state law when she injured Robin. *See Tahfs*, 316 F.3d at 590.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ESTATE OF ROBIN COTTINGHAM, et al.,
Plaintiffs,

Case No. 1:16-cv-704
Dlott, J.
Litkovitz, M.J.

vs.

HAMILTON COUNTY DEPARTMENT
OF JOB AND FAMILY SERVICES, et al.,
Defendants.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).